NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0385n.06

No. 24-3718

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Aug 01, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| SHA-KIM MANDELA, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Sha-Kim Mandela appeals his 120-month sentence, imposed after he pleaded guilty to one count of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (f). Mandela argues that the district court erred in classifying him as a career offender at sentencing because his past Ohio conviction for aggravated robbery does not qualify as a crime of violence under U.S.S.G. § 4B1.1. We disagree and **AFFIRM**.

## I.

On April 28, 2023, Mandela walked into and robbed Key Bank in Elyria, Ohio. He gave the teller a note that read: "Give me the money, no die pack I will kill you and everybody in here. Stay away from the button." He took $1,587 from the teller and fled the scene in a vehicle that was waiting outside for him.

Mandela then drove to a nearby supermarket and disposed of the clothes he wore during the robbery. A short time later, officers found Mandela's jacket and hat in the trash bin of the

supermarket bathroom. Mandela was arrested later that day. Officers found him with $1,671.56 in cash, the robbery note, rubber gloves, and Vaseline in his possession.

The government indicted Mandela on one count of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (f). He pleaded guilty to that count.

The pre-sentence report initially outlined Mandela's base offense level under U.S.S.G. § 2B3.1 as 20. The report then added two levels under § 2B3.1(b)(1) because Mandela stole money from a financial institution, and an additional two levels under § 2B3.1(b)(2)(F) because he threatened to kill everyone inside the bank.

But the report also outlined an alternative, higher Guidelines range under the career-offender provision. *See* U.S.S.G. § 4B1.1. In the report's view, the provision applied to Mandela because he was previously convicted of Ohio aggravated robbery, a violation of Ohio Revised Code § 2911.01(A)(1), and assault, a violation of § 2903.13(A). After a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b), probation reported Mandela's offense level to be 29 with a criminal history category VI. That calculation correlated to an advisory Guidelines range of 151 to 188 months' imprisonment.

Mandela objected to his characterization as a career offender. He argued that his prior aggravated-robbery conviction did not constitute a crime of violence. The district court ultimately overruled Mandela's objection, finding the requirements for career-offender status under § 4B1.1 satisfied. It held that a conviction under Ohio Revised Code § 2911.01(a)(1), when predicated on a § 2913.02 theft offense, qualifies as a crime of violence because it categorically matches the Guidelines' definition of extortion.

The district court relied on the *Shepard* documents attached to the government's sentencing memorandum. The documents set forth detailed descriptions of Mandela's prior convictions—

eleven, to be exact. Because we are concerned with the prior assault and aggravated-robbery charges only, we pause to explain the facts underlying those charges. In September 2009, officers arrested Mandela after they were called to investigate his attempt to cash a fraudulent check. During the arrest encounter, Mandela resisted the officers while possessing a firearm. Among other offenses, he was charged with assault under Ohio Revised Code § 2903.13(A). In January 2010—just a few months after being released on bond—Mandela walked into a store with a firearm, demanded money from one bystander, and fought with a second one. As a result of this incident, Mandela was charged with, most relevant here, aggravated robbery under § 2911.01(A)(1). Mandela served prison time for both convictions.

For the present case, the district court varied downward from the Guidelines and sentenced Mandela to 120 months' imprisonment, followed by three years' supervised release. Although Mandela's counsel argued for a Guidelines-range sentence absent the career-offender designation, the court declined, citing Mandela's rapid return to criminal conduct following his release from custody in 2022.

## II.

Mandela timely appealed. His challenge is a narrow one. He contends that his prior Ohio conviction for aggravated robbery does not qualify as a crime of violence under either the elements clause or the enumerated-offenses clause of the Sentencing Guidelines' career-offender provision. We need not address whether his conviction satisfies the elements clause, as the government relies solely on the enumerated-offenses clause. Because Mandela's aggravated-robbery conviction is a categorical match for the Guidelines' definition of extortion, the district court did not err in applying the career-offender enhancement.

3

**A.**

The Sentencing Guidelines impose an increased offense level and criminal history category for individuals classified as career offenders. *See* U.S.S.G. §§ 4A1.1, 4B1.1 (2023). A defendant is deemed a career offender if three conditions are met: (1) the defendant was at least 18 years old at the time he committed the current offense; (2) the current offense is a federal felony that qualifies as either a crime of violence *or* a controlled-substance offense; and (3) the defendant has at least two prior felony convictions that are also classified as either crimes of violence or controlled-substance offenses. *Id.* § 4B1.1(a).

This case involves a dispute over the third prong: whether Mandela has at least two prior qualifying convictions that are crimes of violence. A federal or state offense qualifies as a "crime of violence" if it is punishable by more than one year of imprisonment and satisfies one of two definitions. First, an offense may qualify under the "elements clause" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" *Id.* § 4B1.2(a)(1). Second, an offense may qualify under the "enumerated-offenses clause" if the elements of the offense match one of the specifically listed generic offenses. *See id.* § 4B1.2(a)(2) (including murder, voluntary manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, or certain firearm and explosive offenses as defined by federal law).

The parties do not dispute that Mandela's prior assault conviction constitutes a crime of violence. So, the only question before us is whether Mandela's aggravated-robbery conviction qualifies as a crime of violence under the enumerated-offenses clause. We review de novo the district court's holding that it did. *United States v. Cervenak*, 135 F.4th 311, 320 (6th Cir. 2025) (en banc).

To determine whether Mandela's prior conviction qualifies as one of the offenses listed in the enumerated-offenses clause, we apply the categorical approach. *Id.* This analysis focuses solely on the legal elements of the offense, not the particular facts underlying Mandela's prior conviction. *United States v. Butts*, 40 F.4th 766, 770 (6th Cir. 2022). Under this framework, we compare the elements of his prior offense with the elements of the "generic" version of the enumerated crime. *Descamps v. United States*, 570 U.S. 254, 257 (2013). A state conviction qualifies as a categorical match only if its "elements are the same as, or narrower than, those of the generic offense." *Id.* Here, that means if Ohio's aggravated-robbery statute "reaches conduct outside the scope of" the generic offense—such that a hypothetical defendant could be convicted without satisfying all the elements of the Guidelines offense—then the conviction does not qualify as a "crime of violence." *United States v. Ivy*, 93 F.4th 937, 943 (6th Cir. 2024).

The government argues that Mandela's Ohio aggravated-robbery conviction is a categorical match for Guidelines generic extortion. The district court so found, and we agree.

**B.**

Our task is to test the government's claim by comparing the statutory elements of the Ohio offense to the generic definition of extortion. Ohio's aggravated robbery statute provides, in relevant part:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
>
> (2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.

Ohio Rev. Code § 2911.01.

5

For categorical-approach purposes, this statute is divisible. At the outset, subsections (A)(1)–(3) provide three different ways a person may satisfy the "aggravated" element of the offense. The provision is also divisible a second way. Under subsection (A), the offense "must be predicated on the defendant's commission of a 'theft offense,'" of which § 2913.01 gives 31 different possibilities. *United States v. Wilson*, 978 F.3d 990, 998 (6th Cir. 2020) (quoting *State v. Tench*, 123 N.E.3d 955, 1006–07 (Ohio 2018)). The theft statute lists serious crimes like robbery, burglary, and aggravated theft as well as "less serious offenses, such as tampering with coin machines, safecracking, insurance fraud, and workers' compensation fraud." *Ivy*, 93 F.4th at 942. As a result, a person can commit Ohio aggravated robbery by engaging in any of the enumerated predicate theft offenses while also "possessing and using a deadly weapon." *Id.*

Because § 2911.01 is divisible, we apply a modified categorical approach. *Id.* at 943. That allows for a limited inquiry into the record to determine which version of the offense formed the basis of Mandela's conviction. *See Descamps*, 570 U.S. at 278. Under this approach, courts may consult a narrow set of records—known as *Shepard* documents—such as the indictment, jury instructions, plea agreement, or plea colloquy to identify the statutory basis for conviction. *See Mathis v. United States*, 579 U.S. 500, 505 (2016); *Cervenak*, 135 F.4th at 322. When the *Shepard* documents don't clearly indicate which statutory alternative formed the basis of the defendant's conviction, we must assume that the conviction rested on the least-culpable conduct criminalized by the statute. *See Cervenak*, 135 F.4th at 323.

Here, the *Shepard* documents confirm that Mandela pleaded guilty to violating § 2911.01(A)(1), with the predicate offense being general theft**,** as defined in §§ 2913.01 and 2913.02. The indictment states that:

> [Mandela] . . . did, in attempting or committing a theft offense, *as defined in section 2913.01 and 2913.02 of the Revised Code*, or in fleeing immediately after the attempt or

offense upon [the victim] did have a deadly weapon to wit: firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

R. 23-1, Indictment, PageID 158 (emphasis added).

So, are the elements of Ohio aggravated robbery under § 2911.01(A)(1), based on general theft under § 2913.02, broader than the elements of extortion as defined in the Guidelines' enumerated-offenses clause? *See Descamps*, 570 U.S. at 257. In other words, could Mandela have been convicted under the Ohio statute without necessarily admitting to all the elements of Guidelines generic extortion?

The answer is no. According to the Guidelines, the elements of extortion are: "[1] obtaining something of value from another [2] by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. § 4B1.2(e)(2) (2023). Thus, to qualify, the Ohio aggravated-robbery statute must not reach any conduct broader than this definition. It does not.

## C.

The district court correctly concluded that Mandela's aggravated-robbery conviction under Ohio Revised Code § 2911.01(A)(1), predicated on general theft under § 2913.02, qualifies as a crime of violence because the statute's elements are "the same as, or narrower than," the elements of Guidelines extortion. *Descamps*, 570 U.S. at 257.

The first question is whether Ohio aggravated robbery with a deadly weapon, when predicated on general theft, requires an offender to obtain something of value from another person. *See Ivy*, 93 F.4th at 946. Because the *Shepard* documents in this case disclosed that Mandela committed aggravated robbery with a deadly weapon and specified that the predicate theft offense

of § 2913.02 formed the basis of the conviction, we are not left to apply the least-culpable means and may instead look at the actual specified offense. *Id.*

Ohio's general theft statute satisfies the first element of generic extortion. The statute prohibits a person from "knowingly obtain[ing] or exert[ing] control over either the property or services" of another. Ohio Rev. Code § 2913.02(A). The phrase "knowingly obtain or exert control" corresponds to the act of "taking" in the generic definition of extortion, and both "property" and "services" equate to "something of value."

True, the state statute outlines multiple means of commission—such as through threat, deception, or simply without consent. *See id.* § 2913.02(A)(1)–(5). Mandela argues that because the *Shepard* documents do not specify which subsection formed the basis for his conviction, we must presume it rested on the least-culpable conduct criminalized—namely, a violation that does not include "the use, attempted use, or threatened use of force against the person of another." But that argument misses the point. Regardless of the specific subsection, each variation under § 2913.02 necessarily involves unlawfully obtaining control over something of value from another person. That is sufficient to meet the first element of generic extortion. Thus, we hold that the Ohio aggravated-robbery statute, with a specified predicate theft offense of § 2913.02, does require an offender to obtain something of value from another person to violate the statute.

For the second prong of generic extortion, we look beyond the theft statute to the aggravated-robbery statute itself. Does Ohio aggravated robbery require proof of force, fear of physical injury, or threat of physical injury? It does. Section 2911.01(A)(1) applies when the offender commits a theft offense while having a deadly weapon on or about his person and either displays it, brandishes it, indicates possession, or uses it. The presence and display (or use) of a deadly weapon in the course of committing theft inherently involves either actual force or the

8

threat of physical harm sufficient to instill fear in the victim. As the Ohio Supreme Court has recognized, the act of displaying or otherwise signaling possession of a deadly weapon during a theft offense functions as a coercive threat that compels the victim to surrender property. *State v. Evans*, 911 N.E.2d 889, 894 (Ohio 2009). That threat, whether implicit or explicit, is sufficient to instill fear of physical injury and satisfies the coercive element of generic extortion.

What's more, Ohio courts have held that a defendant convicted of aggravated robbery under § 2911.01(A)(1) also commits the lesser-included offense of robbery under § 2911.02(A)(2), which requires proof that the perpetrator "[i]nflict[ed], attempt[ed] to inflict, or threaten[ed] to inflict physical harm on another." *See Evans*, 911 N.E.2d at 894; *see also State v. Harris*, 911 N.E.2d 882, 885–86 (Ohio 2009); *United States v. Patterson*, 853 F.3d 298, 303 (6th Cir. 2017). The aggravated-robbery statute, by definition, thus cannot be violated without conveying at least a threat of violence. Accordingly, aggravated robbery under § 2911.01(A)(1) involves, at minimum, the threat of violence sufficient to meet the "force, fear of physical injury or threat of physical injury" element of generic extortion.

\* \* \*

Mandela's prior conviction for aggravated robbery is a match for Guidelines generic extortion and therefore constitutes a crime of violence for Guidelines sentencing purposes. So, the district court did not err in applying the career-offender enhancement. *See also United States v. Rice*, 2024 WL 3898564, at \*5–6 (6th Cir. Aug. 22, 2024) (holding that Ohio's aggravated robbery statute was a categorical match to Guidelines generic extortion).

### III.

For these reasons, we **AFFIRM**.